PICKETT vs. SCHOOL DISTRICT No. ONE, TOWN OF WIOTA, etc.

| 25 | 551 |
| 74 | 320 |
| 25 | 551 |
| 76 | 38 |
| 25 | 551 |
| 82 | 98 |
| 25 | 551 |
| d100 | 250 |

TRUSTS: *Persons holding fiduciary relation cannot contract with one of their own number — Ratification by principal — Effect. of accepting benefit of partial performance.*

1. It is a violation of the trust for several persons, holding together a fiduciary relation to others, to contract with one or more of their own number in matters relating to such trust.

2. A contract between a school board and one of its members, for the building of a school-house, is voidable in equity by the district.

3. The fact that a majority of the board may act in letting such contracts does not alter the rule ; and *it seems* that such a contract would be voidable even if the contractor did not act with the board, nor seek to influence its action, in the matter of letting the same ; but the contrary fact appears here.

4. The district, with full knowledge of the facts, might ratify such a contract.

5. *It seems,* that if the contract were fully performed by the other party, and the district, knowing all the facts, should accept and retain the benefit thereof, it might be held to have been ratified in all its terms and conditions.

6. *It seems,* also, that if the contract were partly performed, and the dis trict accepted and retained such partial benefit, it would become liable on a *quantum meruit.*

7. But where there has been only a partial performance, and the statute of limitations has run on the *quantum meruit,* the contractor has no remedy on the contract.

APPEAL from the Circuit Court for *La Fayette* County.

In February, 1858, the clerk and treasurer of the defendant school district, constituting a majority of the board of directors thereof, entered into a written contract under seal with the plaintiff, who was then the director of said district, by which contract plaintiff undertook to build a school-house for the district, in accordance with a certain plan and specifications, and to furnish the same by the first of June following, for which he was to receive $453. The inside work upon the building was unfinished upon said first of June, and was never finished by him; but he claims that this was solely through the fault of the defendant. Some time in 1868 (apparently), he brought this action to recover the balance alleged to be due on the contract price, after deducting $78 already paid. Numerous questions were presented by the record which became unimportant here. The defendant insisted that the contract was void, and that any claim on a *quantum meruit* was barred ; but the court instructed the jury, that, while plaintiff could not recover on a *quantum meruit,* the contract was valid.

Verdict for the plaintiff ; new trial denied ; and defendant appealed from a judgment on the verdict.

*Henry S. Magoon,* for appellant, to the point that the contract was void because of the fiduciary relation which the plaintiff bore at the time to the district, cited Dunlap's Paley, 10 ; Story on Agency, § 210 ; 1 Parsons on Con. 74, 75 ; *Stone v. Hayes,* 3 Denio, 579 ; *Morrison v. Railroad Co.,* 52 Barb. 173 ; *Abbott v. Am. Rubber Co.,* 33 id. 578 ; *Van Epps v. Van Epps,* 9 Paige, 241 ; *Wormley v.*

*Wormley*, 8 Wheat. 421 ; 1 Russ. & Myl. 53 ; 11 Bligh, 397, 418 ; 4 East, 577, n. ; 3 Story C. C. 181, 290 ; 1 Story's Eq. Jur. §§ 315, 316, 465 ; Willard's Eq. Jur. 605.

*P. A. Orton, Jr.*, for respondent, argued that under the statute it was competent for a *majority* of the board to enter into such a building contract, under subd. 2, sec. 1, ch. 4, R. S. 1849 ; and that the district had ratified the action of the board by accepting and continuing to use the building. *Mills v. Gleason*, 11 Wis. 470 ; *Cady v. Watertown*, 18 id. 323.

PAINE, J. We think there is one fatal objection to the plaintiff's right to maintain this action, which renders it unnecessary to consider any of the other questions discussed. That is, that inasmuch as it appears that the plaintiff was himself the director of the district at the time the contract was let, and took part as such in the proceedings to let it, it was against public policy to allow him, while holding that fiduciary relation to the district, to place himself in an antagonistic position, and obtain the contract for himself from the board of which he was a member. The general principle upon which this proposition must rest is, that no man can faithfully serve two masters, whose interests are in conflict. And as men usually and naturally prefer their own interests to those of others, where one attempts to act in a fiduciary capacity for another, the law will not allow him, while so acting, to deal with himself in his individual capacity. This principle has been most frequently illustrated in cases of sales by officers, agents and trustees, in all of which it has been held that they cannot become the purchasers, because this would allow their interests to come in conflict with their duties to their principals. The same doctrine is as applicable to the question of taking a contract as to that of making a sale. And the only doubt would be, whether it should be held applicable in a case where a board, consisting of several, are authorized to

554    SUPREME COURT OF WISCONSIN,

Pickett vs. School District No. 1, Town of Wiota, etc.

act in a fiduciary capacity, and attempt to deal in that capacity with one of their own members. I think it is; and that, although the impropriety of it would not be so glaring as in the case of a single agent dealing with himself, yet the danger of undue and improper influences, and of frequent sacrifices of the interests of the principal in a manner not always open to detection, would be extremely great.

I have found several well-considered cases where the doctrine has been so applied. In *Cumberland Coal Co. v. Sherman*, 30 Barb. 553, a very elaborate opinion was given by Justice DAVIES, in which the whole subject was very fully considered. In relation to this precise point, commencing on page 572, he says :

"Neither are the duties or obligations of a director or trustee altered from the circumstance that he is one of a number of directors or trustees, and that this circumstance diminishes his responsibility or relieves him from any incapacity to deal with the property of his *cestui que trust.* The same principle applies to him, as one of a number, as if he were acting as a sole trustee. It is not doubted that it has been shown that the relation of the director to the stockholders is the same as that of the agent to his principal, the trustee to his *cestui que trust;* and out of the identity of these relations necessarily spring the same duties, the same danger and the same policy of the law.

"In the language of the plaintiff's counsel, it is justly said : 'Whether it be a director dealing with the board of which he is a member, or a trustee dealing with his co-trustees and himself, the real party in interest — the principal — is absent ; the watchful and effective self-interest of the director or trustee, seeking a bargain, is not counteracted by the equally watchful and effective self-interest of the other party, who is there only by his representatives ; and the wise policy of the law treats all such cases as that of a trustee dealing

JANUARY TERM, 1870.          555

Pickett vs. School District No. 1, Town of Wiota, etc.

with himself.' The number of the directors or trustees does not lessen the danger or insure security that the interests of the *cestui que trust* will be protected. The moment the directors permit one or more of their number to deal with the property of the stockholders, they surrender their own independence and self-control. If five directors permit the sixth to purchase the property intrusted to their care, the same thing must be done with the . others if they desire it. Increase of the number of the agents in no degree diminishes the danger of unfaithfulness. *Whitecote v. Lawrence*, 3 Vesey, 470, was a case of several trustees. In this case Lord LOUGHBOROUGH says: 'There was more opportunity for that species of management which does not betray itself much in the conduct and language of the party, when several trustees are acting together. I am sorry to say there is greater negligence where there is a number of trustees.'"

This entire extract seems to me directly applicable to the case of a school director taking a contract from the district board, like the one under consideration.

The general subject is also fully considered in a late edition of Story on Agency, with notes by Redfield and Herrick. See §§ 210 *et seq.* On page 251, in the notes, the case of the *Aberdeen Railway Co. v. Blaikie*, decided by the House of Lords in 1854, is referred to, and it is also directly applicable. It arose upon a contract by a manufacturer to supply iron furnishings to a railway company of which he was director or chairman at the date of the contract. Lord CRANWORTH, in delivering the opinion of the court, says: "A corporate body can act only by agents, and it is of course the duty of those agents so to act as best to promote the interests of the corporation whose affairs they are conducting. Such an agent has duties to discharge of a fiduciary character toward his principal, and it is a rule of universal application, that no one having such duties to discharge

shall be allowed to enter into engagements in which he has or can have a personal interest conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this principle adhered to, that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. It obviously is or may be impossible to demonstrate how far, in any particular case, the terms of such a contract have been the best for the *cestui que trust* which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or interests of those for whom he is a trustee, have been as good as could have been obtained from any other person ; they may even at the time have been better. But still so inflexible is the rule that no inquiry on that subject is permitted. The English authorities on this subject are numerous and uniform.''

In the case of the *People v. The Township Board of Overyssel*, 11 Mich. 222, the court applied the same principle to a contract for the construction of some public works for several towns, which was let by a '' harbor committee, '' acting for the towns, to several contractors, a portion of whom were members, though a minority, of the committee, and participated in the proceedings.

MANNING, J., said : '' All public officers are agents, and their official powers are fiduciary. They are trusted with public functions for the good of the public — to protect, advance, and promote its interests, and not their own. And a greater necessity exists than in private life to remove from them every inducement to abuse the trust reposed in them, as the temptations to which they are sometimes exposed are stronger, and the risk of detection and exposure is less.'' And again he says : '' We think it no exception to the rule we have stated, that all the contractors were not members of the board of freeholders, or that those who were members were a minority of the

board.   The rule would not amount to much if it could be evaded in any such way.   It might almost as well not exist as to exist with such an exception.   The public would reap little or no benefit from it."

The. opinion of CHRISTIANCY, J., also comments on the same point, and shows very clearly the danger to be apprehended if such contracts were permitted, not only from the direct power of the contractors as members of the board, but also from their influence upon the other members.   And it is obvious that this latter species of influence is equally to be apprehended, even though the contracting member does not act as a member of the board in letting the contract.

It appears in this case that the plaintiff participated in the proceedings to let the contract.   The notice for proposals was signed by him as director.   He did not actually sign the contract as a member of the board, but the evidence leaves no doubt that he actively exerted himself to secure it.   The clerk testifies that it was signed by the other members at the plaintiff's importunity, and that plaintiff flew into a rage when the clerk objected to signing it.   We do not intimate that it would make any difference, even if it did not appear that plaintiff acted at all as a member of the board in the transaction, or used any effort to influence the others.   But here it appears that he did both ; and the case is clearly within the principle supported by the decisions above referred to.

Our statute, which was in force at the time, declaring that "all words purporting to give a joint authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons," etc., does not affect the result. It would of course enable the majority of the board to act and make a valid contract, in the absence or against the vote of the minority.   But it had no design to abrogate the general principle above referred to, and allow

the minority to place themselves in positions where their interests are in conflict with their official duties, and secure contracts for themselves from the majority.

In the case in Michigan, although the contract had been fully executed by the contractors, the court held it void as against public policy, and refused to issue a *mandamus* to compel the town to issue bonds in payment. We have not in our library the original report containing the English case above referred to, so that we do not know what was the nature of the action, or how the question arose. But the note from which we quoted states that the House of Lords held that the contract "was invalid, and not enforceable against the company."

Still, there seems ground for a distinction between contracts which are held to be against public policy, merely on account of the personal relations of the contractor to the other parties in interest, and those which are void because the thing contracted for is itself against public policy. In the latter class the parties acquire no rights which can be enforced either in the courts of law or equity. But in the former, the thing contracted for being in itself lawful and beneficial, it would seem unjust to allow the party who may be entitled to avoid it, to accept and retain the benefit without any compensation at all. And it is accordingly held, in all those cases where agents or trustees empowered to sell attempt to purchase for their own benefit, not that the sales are absolutely void and pass no title, but that they may be avoided by the principal, who may have them set aside in equity, if, after a knowledge of the facts, he so elect. Story on Agency, above cited, page 246, note 2. In such cases the trustee or agent, if the sale or contract were avoided, would get his money back. The principal could not take the money and avoid the sale too.

And, perhaps, the true theory is, that, in all cases where the principle we have discussed is applicable, the contract is rather voidable in equity at the option of the

principal than absolutely void at law.   So that, in a case like this, the defense would be, under the present practice, an equitable one.

Undoubtedly in such cases the principal, having full knowledge of all the facts, may affirm the contract.   And if he should do so, it would become binding.   If it had been fully executed by the contracting party, and the principal should, knowing all the facts, elect to accept and retain the benefit of it, he might be held to have thereby ratified it according to all its terms and conditions.   And where it had not been so executed, but had been partially fulfilled, and he elected to accept and retain such partial benefit, he might become liable, on a *quantum meruit*, upon the same principles as in other cases.

But it appears here that the contract never was fulfilled by the plaintiff.   The district, after expending a considerable sum to complete the school-house, used it, and gave the plaintiff an order for $175.00.   If upon these facts he had any claim upon them, it would have been upon a *quantum meruit*, as the contract was not so legally binding on the district that their neglect to comply with it constituted a sufficient excuse for the plaintiff's non-fulfillment.   As this claim on a *quantum meruit*, if any existed, was long since barred by the statute of limitations, and as this action can be maintained only on the contract, it cannot be sustained.

*By the Court.* — The judgment is reversed ; and as there is no dispute as to the facts upon which we have decided it, and no occasion for any further trial, the cause is remanded with directions to dismiss the complaint.