GEORGE W. LAINHART, JOHN SEWALL, R. E. MCDONALD, S. A. BELCHER AND F. C. AICHOR, COUNTY COMMISSIONERS OF DADE COUNTY, EUGENE DIMICK, COUNTY TREASURER, AND HENRY BROOKER, T. N. GAUTIER AND W. J. SHONE, BOND TRUSTEES OF DADE COUNTY, APPELLANTS, v. R. HUDSON BURR, W. A. LARKIN, WILLIAM LOWE AND C. CONE, APPELLEES.

1. If a county officer having power to purchase supplies for public use contracts with himself or with a firm of which he is a member to supply them; such contract is void on grounds of public policy, no action can be maintained to recover the contract price, and even though the amount specified in such contract were audited and a warrant drawn to pay it, a court of equity will enjoin such payment at the suit of taxpayers. Such transactions are unlawful, even though no statute denounces them.

2. Chapter 4020, act approved May 19, 1891, applies only to contracts for the working of public roads or streets, the construction or building of bridges, the erection or building of houses or for the performance of any other public work in which the officer was a party to the letting, and not or ordinary purchases of supplies for the use of the county while the commissioners are building public roads with county convicts and the work is not let out by contract.

3. Where county commissioners or purchasing agents employed by them, prior to the enactment of Chapter 5186, acts of 1903, procured supplies for county purposes from firms in which some of the commissioners or purchasing agents were partners, such transaction though not forbidden by statute were illegal being opposed to public policy; and equity at the suit of taxpayers will enjoin the payment of warrants issued by the commissioners upon the county treasury to pay for the same. Where, however, the supplies had been actually used for county purposes and the warrants issued had been actually paid, and taxpayers filed their bill to compel the commissioners to account for and restore to the county treasury the money represented by such warrants, relief should be granted according to the following rules: The commissioners should be required to account for and restore to the treasury the full amount paid out by them on account of such transactions of the nature mentioned as were tained with actual fraud, or for such supplies as were not necessary and beneficial to the county, or which could not lawfully have been purchased by the commissioners from other persons for the use of the county. Upon all transactions of the nature mentioned, where the supplies furnished were necessary and beneficial to the county, in the purchase of which no actual fraud was perpetrated and which the commissioners would have had authority to purchase from other persons for the use of the county, the commissioners should be required to account for and restore to the county treasury only the money paid therefrom in excess of the actual cost of the supplies to those who furnished them—such cost not to exceed their reasonable market value.

4. Where an answer in chancery admits the truth of certain
   allegations of the bill, the facts so alleged and admitted
   are not in issue; consequently the complainant is entitled
   to a decree upon such allegations though he produces no
   other proof, even though defendant has produced evidence
   tending to show that the allegations are untrue.

This case was decided by Division A.

Appeal from the Circuit Court for Dade County.

STATEMENT.

Appellees, who are citizens of Dade  county, and  tax
payers upon real and personal property situated therein,
filed their bill of complaint against appellants in the Cir-
cuit Court of that county on November 21, 1902, alleging
that Lainhart, Sewell, McDonald, Belcher  and  Aichor
were the duly qualified county commissioners, Dimick the
county treasurer, and Brooker, Gautier and Shone the
bond trustees of said county; that a special fund had been
created for building a court house, &c., and the disburse-
ment of the same was allowed by law to be  done by the
bond trustees upon warrants drawn by the county com-
missioners; that on November 3rd, 1902, the county com-
missioners audited and allowed as a claim against the
county an account preferred by  a  partnership  styled
Lummus & Sewall of which said John Sewall was a mem-
ber, for supplies furnished the county, a copy of the ac-
count being attached as an exhibit to the bill;  that ac-
counts against the county in which the  commissioners
or one of them was personally interested had been thereto-
fore audited and allowed by the commissioners and paid
by the treasurer upon warrants issued in  pursuance  of
such allowance, copies of which were attached as exhibits

to the bill; that the claims so audited, allowed and paid were in behalf of firms in which one of the commissioners was a partner at the time the items were alleged to have been furnished and at the time the claims were audited, allowed and paid; that on November 3rd, 1902, the commissioners audited and allowed certain other claims in favor of partnerships of which some one of them was a member, viz: R. E. McDonald & Co., for supplies and feed $53.46, Lummus & Sewell on the bond fund for dynamite $200, but that said amounts had not yet been paid; that several other items specifically set forth in favor of firms of which one of the commissioners was a member had been allowed and either had been or would be paid by the treasurer or the bond trustees unless enjoined, and that there were thousands of dollars in the hands of the bond trustees belonging to the tax payers of the county subject to the order of the county commissioners, liable at all times to be diverted by them, which was about to be expended contrary to law and against the interests of the tax payers of the county. The bill contains other allegations not material to the errors assigned upon this appeal, and prays, among other things, that an injunction issue enjoining the commissioners from issuing warrants based upon the auditing had November 3rd, 1902, of accounts presented by the firms of which some one of the commissioners was a member, and enjoining the treasurer and bond trustees from paying the warrants if issued; that an account be taken of the monies in the treasury of Dade county heretofore by the action of the defendants so appropriated by the commissioners upon the alleged auditing and allowance by themselves of claims in favor of themselves, or some one of them, and that the said commissioners be decreed to restore the trust funds so illegally disposed of to the treasury of the county. There is also

a prayer for general relief and for relief in respect to other matters not material to the assignments of error upon this appeal.

On November 27th, 1902, the county commissioners filed their answer to the bill. They allege they do not know if complainants are tax payers as alleged and demand strict proof of same. They allege that Commissioner Sewall is a member of the firm of Lummus & Sewall, which was organized in 1899 to deal in dynamite and blasting supplies and that the firm is the agent of the Aetna Dynamite Co.; that Sewall was appointed commissioner in July, 1901; that before said date the firm sold dynamite, caps and fuses to the county, and continued to do so after the appointment and qualification of Sewall as commissioner, upon orders given by agents of the county upon like terms, prices and conditions as such articles were sold to other customers of the firm; that when necessary the commissioners have authorized county agents having county road work in charge to purchase supplies and such agents have purchased such supplies from whom they pleased and from time to time have placed orders with Lummus & Sewall and the bills therefor have been audited and paid when found correct in like manner as other valid claims against the county; that all bills for supplies rendered by Lummus & Sewall against the county have been found correct, and that the price of each article therein charged has always been found to be the regular retail selling price of such article; that the different dynamite companies doing business in this State have established a uniform price list for blasting supplies which the agents handling such goods may not depart from without violating their contract with the dynamite companies, and all bills rendered the county by Lummus & Sewall have been in accordance with such graded price list and furnished as cheaply as

goods could have been obtained from any source whatever; that the agents of the commissioners were not required by them to purchase supplies of Lummus & Sewall, and no improper or fraudulent use of their powers as commissioners has been exercised for the personal benefit of any member; that valid claims against the county have been audited and paid in which a member was interested, but all such claims have been examined by the board in regular session, and those audited and paid have always been found to be correct as to items, good as to quality and fair and reasonable as to price. The answer also admits that members of the board are also members of the firms of R. E. McDonald & Co., John Sewall & Bro., Lainhart & Potter; that the county agents having the county convicts, and county road work in charge have purchased supplies for the county from these firms as alleged in the bill, but alleges that the supplies were necessary, the prices reasonable; that no fraud on influence was used by any member of the board to secure the orders, and that in no instance was the county charged more than it would have had to pay if purchased elsewhere, while in some instances it was charged less, and in no instance had the county been charged more than other customers for like articles.

The answer admits that the firm of R. E. McDonald & Co., is composed of R. E. McDonald, a county commissioner, and J. R. O'Neal, who is supervisor of the county convict camp and engaged in working convicts on the county roads, and that O'Neal has purchased from the firm supplies for the convicts and feed for the county mules, but alleges that such purchases were made without coercion or pressure of any kind from the commissioners, and only when the same could be procured as conveniently and cheaply as at other places. The defendants deny

that any part of the bond fund will be diverted from its proper use as alleged in the bill. They deny that they have ever at any time contracted with themselves for the purchase of county supplies, and alleged that such supplies have always been purchased by other officers and agents of the county. They allege that they have never at any time, either as individuals or as a board, used any coercion or brought any pressure to bear upon such officers and agents to cause them to trade with the firms of which some one of the commissioners was a member. They allege further that they have not used or exercised any undue influence upon said county officers or agents, or offered any corrupt or unlawful inducements, such as rebates, divisions of profits, promises of promotion or continuous employment to secure a share of trade in county supplies; that such supplies have been purchased from such firms by the county officers and agents when it appeared convenient and to the best interest of the county to do so, or when in the discretion of the county officers it seemed fair and reasonable that said firms, other things being fair and equal, should have their fair and just proportion of the county trade; that the county officers and agents have purchased and are purchasing large quantities of county supplies, including clothing, shoes, medicines, provisions, feed and building materials from other firms in Dade county, and that the bills for same when correct are audited and paid in the same manner and form as the bills specifically set out and attached to the bill of complaint; that the present method of procuring county supplies has been fully enquired into and investigated by the last two grand juries of Dade county, and in each

21 S C

case the grand jury has failed and refused to recommend
a change in said method or to require that the board ad-
vertise for bids.

On November 29th, 1902, at a hearing had upon bill, an-
swer and affidavits, the court made an order granting the
provisional injunction as prayed for.

On December 20, 1902, Dimick, the county treasurer,
filed his separate answer, admitting that he as treasurer
paid the various warrants drawn on him by the county
commissioners in favor of the firms of which some one
of the commissioners were members, as alleged in the bill,
but alleging that as soon as advised that warrants so
drawn were illegally issued he refused further payment
thereof, and as to the other allegations of the bill the an-
swer admitted their truth upon the personal knowledge
and information of the respondent.

On February 7, 1903, the bond trustees filed their an-
swer, alleging that they were appointed by resolution of
the county commissioners, a financial committee styled
"Trustees of County Bonds" for the purpose of receiving
and disbursing the proceeds of certain county bonds in
the sum of $150,000, issued by the board upon an election
held for that purpose, to build a county court house and
jail and paved or hard surfaced roads in said county;
and for the further purpose of receiving from the tax col-
lector all interest money collected by him and paying
same over to the holders of said bonds; and also receiving
from said collector the money collected by taxation to
create a sinking fund to pay off and discharge said bonds
at maturity and to investigate said funds as required by
law; that warrants have been drawn from time to time
by the county commissioners against the bond fund in the
custody and control of the bond trustees, which have been
paid by W. J. Shone, treasurer of said bond trustees, and

that a certain warrant No. 19 for $200.05 in favor of Lummus & Sewall for dynamite used or to be used on the public roads issued by the commissioners at their regular meeting in November, 1902, was presented and paid in regular course of business before defendants had notice of any application for a restraining order against its payment. The answer denies that any part of the fund in the hands of the bond trustees has been improperly paid out on the order of the county commissioners, or has been or is about to be diverted from its proper use, and alleges that every warrant drawn by the county commissioners against said fund has been in settlement of claims and demands contracted by the board pursuant to the purposes for which the bonds were sold; that the bond trustees have not only the custody of the fund, but also the disbursement of same for the purposes already stated; that the present arrangement of disbursing the proceeds of said county bonds upon warrants issued by the county commissioners has grown out of the confidence of defendants in the executive ability and personal integrity of the individual members of the board of county commissioners; that all accounts and vouchers upon which warrants have been issued have been and are subject to the inspection and approval of defendants, and to their best knowledge and belief no part of said bond fund has been diverted from its proper use or purpose, or carelessly or extravagantly disbursed or expended.

General replications were filed to the answers of the defendants, and a special master was appointed to take testimony.

On March 17th, 1904, the cause was heard upon the pleadings and testimony, and the court entered its decree to the following effect:

1st.   That the equity of complainants to the relief and accounting prayed is adjudicated and established, and the provisional injunction heretofore granted is perpetuated.

2nd.   That the several transactions set up in complainants bill "whereby on alleged auditings and allowings" by the county commissioners of claims in favor of some of their number, warrants were drawn and moneys taken from the county treasury, constituted an unlawful taking and appropriation of said funds, and the county commissioners, naming each of them, by and through whom the unlawful taking and appropriation of such funds were consummated are required and decreed to account for the same and for lawful interest accruing thereon from the dates of payment of said warrants and upon such accounting to pay the aggregate amount thereof into the registry of the court.

3rd.   That it is referred to Mitchell D. Price who is master *pro hac vice* in the cause, to take and state an account of said funds so taken and appropriated by said commissioners, and to report to the court with all convenient speed, an itemized statement and the aggregate amount thereof, with interest so accrued thereon for the further action of the court.   From this decree an appeal has been taken to the present term of this court, and the errors assigned are based upon the several provisions of this decree.

*Geo. M. Robbins,* for Appellants.

*G. A. Worley* and *A. W. Cockrell & Son,* for Appellees.

CARTER, J.   *(After stating the facts.)*

The jurisdiction of a court of equity to entertain a bill for injunction and accounting such as was filed in this case is not questioned.   Neither is a question presented as to the sufficiency of the allegations of the bill to obtain the relief prayed.   One of the principal questions involved and argued is, whether county commissioners may through employes selected by them purchase from members of their body or from firms in which such members are partners, supplies to be used for county purposes, audit and approve the accounts and pay for same by warrants drawn on county funds.   The law does not permit a trustee or an agent to make contracts with himself regarding the property committed to his charge, and this on grounds of public policy.   Neither does it permit him to so conduct himself with respect to his trust, as to create a contract by implication with himself.   The temptation to abuse his trust and to benefit himself to the detriment of the trust property is too great to permit him to thus deal with it.   In such dealings he can not act impartially, for self interest will prompt a one-sided view, inclining him to adopt that course which will benefit him individually.   To permit him to buy from himself, puts him in the attitude of being a judge in his own cause, and of attempting to serve two masters whose interests are diametrically opposed.   The law does not denounce such conduct on the theory that fraud or wrong inevitably results, but because it may and probably will result, hence proof that no wrong was intended or committed and that no fraud resulted in a particular case does not render the contract valid.   The law frowns upon and denounces such conduct in every case, and the principal or *cestui que trust* is given a remedy by which all such transactions

shall be set aside if he so desires.   The same principle applies to officers of private corporations as well as to public officers.   If a public officer having power to purchase supplies, contracts with himself to supply them, the contract is void, no action can be maintained for the contract price, and even though the amount specified in such contract were audited and a warrant drawn to pay it, a court of equity will enjoin such payment at the suit of taxpayers.   With respect to county commissioners the principle has peculiar application.   While the range of their powers is limited they are necessarily invested with large discretion to be exercised in the execution of such powers as are conferred upon them, and a sound public policy requires that none of the principles with which the law safeguards the conduct of agents and trustees, should be relaxed in respect to this class of public officers.   It is, therefore, highly improper that the commissioners or purchasing agents employed by them should purchase supplies from members of the board or from firms in which they are partners, especially where the commissioners themselves audit the bills.   Some of the transactions shown in the present case grossly violate this rule of public policy and justly deserve severe condemnation at the hands of the law.   The county commissioners appointed as supervisor of convicts a man who was a partner in business with one of their number.   This supervisor had authority to purchase supplies, and purchased them of the firm composed of himself and a commissioner, whose duty it was to audit and approve the accounts for same.   This was highly improper and can not be tolerated under any rule of public policy.   The public is entitled to the unbiased judgment and discretion of the commissioners and of the supervisor as to the necessity for and the quantity and quality of supplies proposed to be purchased, but if

the supervisor may buy from a firm composed of himself and a commissioner there is great danger that articles may be bought when not needed, and that the judgment and discretion of the supervisor and the commissioner may be warped by self interest, to the great detriment of the public. According to the evidence the firms in which county commissioners were partners supplied from fifty to eighty per cent. of the supplies purchased for the county. The fact that no coercion was used to induce such purchases has little weight in cases where, as here, all the purchasing agents were employed by the county commissioners and could be discharged by them at any time, and one of such agents was a partner with a commissioner in a firm from whom he purchased supplies. Almost all the authorities hold that transactions such as are here disclosed are condemned as being opposed to public policy, even though no statute forbids them, and we are, therefore, constrained to hold that such is the law in this State.

The defendants alleged in their answers and produced testimony tending to prove that no actual fraud was perpetrated or intended against the public in the transactions complained of in the bill; that the supplies purchased had been actually used for the benefit of the county, and it is contended that as the commissioners would have had authority under the law to purchase them from another and to pay the contract price, or in the absence of a contract, what they were reasonably worth, and as the amounts paid for same were the customary prices charged by other persons dealing in such supplies in the county, it would be inequitable to permit the county to recover the money paid for the supplies where they had been used and could not be returned as was the case here.

Many authorities hold that if a transaction like the ones in question is prohibited under a criminal statute prescribing a penalty, there can be no recovery of any sum whatever by the party who furnishes goods in violation of the statute, even though the other party has used them, while others hold that even in such a case the party may recover what they are reasonably worth, though he can not recover the contract price. At the time these transactions occurred we had no statute making them penal offenses, as Chapter 4020, act approved May 19, 1891, entitled "An act to prohibit officers from bidding for or entering into any contract which they are or may be interested in the letting and prescribing a penalty for the same," applies only to contracts for the working of public roads or streets, the construction or building of bridges, the erection or building of houses, or for the performance of any other public work in which the officer was a party to the letting, and not to transactions such as are involved in this case, and Chap. 5186, act approved May 29th, 1903, had not then been enacted. The doctrine that a county "may become liable upon a legal implication when properly made" is expressly recognized and sanctioned in Payne v. Washington County, 25 Fla. 798, text 807, 6 South. Rep. 881, and the question we are required to determine is whether such legal implication exists in the present case. It would seem that in Indiana, and perhaps some other States, no recovery can be had even upon *quantum valebat*, for transactions like the ones here involved, but the great weight of authority sustains the right of the party supplying the goods to recover what he has actually expended, or what the supplies were reasonably worth where no actual fraud was intended or perpetrated, and the supplies were necessary and beneficial to the county, ap-

plying with modifications the general rule which imposes liability upon an individual for goods accepted and used by him, under such circumstances as to exclude the idea of a gift. This rule founded in justice is much restricted in its application to persons under disability, such as infants and married women. It is necessarily much restricted in respect to mere governmental agencies, particularly counties, whose powers are limited and restricted in many ways. If the agents of a county, all of whom possess only limited powers, may impose liability upon the public by accepting and using in the name of the public, articles which inure to the public benefit, where the public are given no opportunity to meet and ratify or repudiate such transaction, then the restrictions thrown around the power of such agents to bind the county by contract or otherwise will be of little avail. This is particularly true, where the commissioners in violation of law whether by statute or the common law rule as to public policy undertake themselves, to furnish supplies to the county which are used for the county's benefit. A rule which will enable county commissioners to impose upon a county liability for supplies furnished by themselves merely because they have been used for the benefit of the county, with their consent, should be applied cautiously and only in cases where the supplies were necessary and beneficial to the county. In all such cases it must not be forgotten that the county is called upon to pay for supplies which though used for a county purpose, and which the county could lawfully buy, yet in the particular case the county has been deprived of the benefit of the unbiased judgment of its commissioners as to the necessity or advisability of incurring expense for the supplies so furnished, and that the officers whose duty it would be to decline to accept the

supplies or to repudiate their use, are the very persons who are interested in forcing liability upon the county therefor. For these reasons liability should not be imposed merely because the articles used are such as the county had authority to buy or pay for and are of some benefit to the county. Furthermore the party furnishing the supplies in such cases, should not be allowed to make a profit upon the transaction, for it would be idle to condemn the transaction as illegal on the ground of public policy, and at the same time permit the party to retain the customary profits of a lawful transacion. If parties can be permitted to recover not only the money actually paid for the articles supplied, but a profit upon the transaction, even though the profit does not exceed that usually made by others upon the sale of similar articles, a premium is offered for violating the law. While there is some conflict in the authorities as to the proper measure of recovery, where the law raises the implication to pay in cases like the present we think the better rule is to confine the recovery to the actual cost to the party furnishing the supplies, provided that does not exceed the reasonable fair value, and to disallow every element of profit involved in the transactions. For authorities bearing upon the different phases of the questions herein discussed see Berka v. Woodward, 125 Cal. 119, 57 Pac. Rep. 777, S. C. 45 L. R. A. 420; Mayor v. Huff, 60 Ga. 221; City of Concordia v. Hagaman, 1 Kan. App. 35, 41 Pac. Rep. 133; Atchison County v. DeArmond, 60 Mo. 19; Goodyear v. Brown, 155, Pa. St. 514, 26 Atl. Rep. 665, S. C. 20 L. R. A. 838; Findlay v. Pertz, 66 Fed. Rep. 427, S. C. 29 L. R. A. 188; Quayle v. Bayfield County, 114 Wis. 108, 89 N. W. Rep. 892; Beebe v. Board of Supervisors of Sullivan County, 64 Hun 377; Spearman v. Texarkana, 58 Ark. 348, 24 S. W. Rep. 883; Currie v. School-District No. 26 of Murray

County, 35 Minn. 163, 27 N. W. Rep. 922; City of Fort Wayne v. Rosenthal, 75 Ind. 156; Waymire v. Powell, 105 Ind. 328, 4 N. E. Rep. 886; Pickett v. School District No. 1, Town of Wiota, 25 Wis. 551; Gardner v. Butler, 30 N. J. Eq. 702; Commonwealth v. Commissioners of Philadelphia County, 2 S. & R. 193; The President and Trustees of the City of San Diego v. The San Diego and Los Angeles Railroad Company, 44 Cal. 106; Stropes v. Board of Commissioners of Greene County, 72 Ind. 42; Smith v. City of Albany, 61 N. Y. 444; 1 Dillon on Municipal Corporations (4th ed.) section 444.

We are of opinion that all transactions whereby the commissioners or those acting under their authority, procured supplies from firms in which any of the commissioners or their purchasing agents were partners, are illegal, being opposed to public policy, and that it was proper to enjoin the payment of warrants issued in payment for such supplies. But we think the court below erred in decreeing the repayment by the commissioners of all sums actually paid out on account of every transaction for supplies obtained from firms in which a commissioner was a partner, and hold that the commissioners can only be required to account for and pay into the treasury the full amount paid out on account of such transactions as were tainted with actual fraud, or for such supplies as were not *necessary and beneficial* to the county, or which could not have been lawfully purchased by the commissioners from other persons, for the use of the county. The commissioners must, however, be held to account for and pay into the county treasury all profits or excess over the actual cost of the supplies to those who furnished them, such cost not to exceed their reasonable market value on all supplies so furnished which were *nec-*

*essary and beneficial* to the county in the purchase of which no actual fraud was perpetrated, and which the commissioners would have had authority to purchase from other persons for the use of the county. In other words the commissioners will only be required to account for the moneys paid out by them in excess of such sums as the parties furnishing the supplies under the circumstances stated, would be permitted to recover from the county by appropriate proceedings in the courts, which recovery would not include any element of profits in the transactions.

In order that no misapprehension may arise it may be well to state that the injunction against payment of outstanding warrants issued for supplies purchased from firms in which a commissioner was a member does not operate to prevent the commissioners from issuing other warrants in lieu thereof, to the parties who furnished the supplies for such amounts as may be found proper in accordance with the rules laid down above.

The appellants contend that as Aichor and Belcher, two members of the board of county commissioners, were not members of any firm from which the supplies were obtained, and as the evidence fails to show that these two men voted to order the payment of any of the accounts criticised, it was error to enter a decree against them jointly with the other three. The answer to this contention is that the bill alleges that all the defendants as county commissioners audited all of the claims, and the answer of the commissioners does not deny, but admits the fact and nowhere asserts that Aichor and Belcher did not participate and vote with the other members for the allowance and payment of the claims.

The bill alleges that two claims one in favor of Lummus

& Sewall for $200, the other in favor of R. E. McDonald & Co. for $53.40 were audited and allowed November 3, 1902, but that same had not been paid when the bill was filed. The answer of the bond trustees alleges that the Lummus & Sewall warrant was paid in regular course by them before they had notice of any application for a restraining order, and the proof supports the answer in this respect. The allegation of the bill respecting the nonpayment of the other warrant was not put in issue by any of the answers. On the contrary the answer of the treasurer admits its truth. Under these circumstances we think it was proper to perpetually enjoin the payment of the last mentioned warrant though improper as to the other one.

The decree appealed from will be reversed and the cause remanded with direction that it be referred to a master to take further testimony, and to state an account in conformity with the views herein expressed, and for such further proceedings as may be conformable to equity.

WHITFIELD, C. J., and SHACKLEFORD, J., concur.

TAYLOR, P. J., and HOCKER, J., concur in the opinion.

COCKRELL, J., being disqualified, took no part in the consideration of this case.