HILL COUNTY v. SHAW & BORDEN CO.

(Circuit Court of Appeals, Ninth Circuit. August 9, 1915.)

No. 2520.

1. COUNTIES ⊂⊃113—CONTRACTS FOR SUPPLIES—STATUTES.

Rev. Codes Mont. § 2897, requiring the county commissioners to contract with a newspaper of general circulation published within the county for the county printing, including blanks and blank books, is a prohibition against contracting with any other than a newspaper of the county, and any contract in derogation thereof is void.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174–180; Dec. Dig. ⊂⊃113.]

2. CONTRACTS ⊂⊃138—INVALIDITY—QUANTUM MERUIT—TROVER.

Where a contract for the purchase of property which has been converted by the buyer is merely malum prohibitum and did not contravene public policy, and no penalty was imposed for a violation of the statute, there could be a recovery on a quantum meruit or of the property itself or in trover.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. ⊂⊃138.]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. COUNTIES ⊙⊸129—CONTRACTS FOR SUPPLIES—LIABILITY.

A county which, without complying with a statute directing the county commissioners to contract with some newspaper of general circulation published in the county for supplies, procures supplies for keeping county records elsewhere and appropriates them, is liable for conversion thereof independent of the contract.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 197; Dec. Dig. ⊙⊸129.]

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by the Shaw & Borden Company against Hill County. There was a judgment for plaintiff, and defendant brings error. Affirmed.

This is an action for conversion of certain books and other property, which Hill county procured of Shaw & Borden Company, a corporation, defendant in error, for use by the county for keeping its records and carrying on the public business of the county. The books and property were procured from Shaw & Borden Company under a subcontract with one B. B. Weldy, who was under contract with the county to furnish them. The complaint sets up the fact that the county entered into a contract in writing with Weldy, proprietor and publisher of a newspaper which had been published in the county for more than six months prior thereto, for furnishing such books and property, and that the Shaw & Borden Company agreed with Weldy to sell, furnish, and deliver to the county the property in question. It is further alleged:

"That this plaintiff has never owned nor published a newspaper and has never owned nor operated a printing establishment in the state of Montana, by reason of which the said defendant asserts and claims that the said Weldy was prohibited by section 2897 of the Revised Codes from subletting his said contract with said county, or any portion thereof to this plaintiff and from contracting and agreeing with this plaintiff to furnish and deliver the said books and other property so described in Exhibit A to said county, and denies any liability or obligation to pay this plaintiff or said Weldy for said books or other property or any part thereof, and has refused and still refuses to pay any amount whatsoever therefor."

Then follow allegations of ownership in Shaw & Borden Company, value, and conversion by the county, and prayer for judgment for the value of the property.

C. A. Spaulding, of Helena, Mont., and L. V. Beaulieu and Victor R. Griggs, both of Havre, Mont., for plaintiff in error.

John B. Clayberg, of San Francisco, Cal., and Gunn, Rasch & Hall, of Helena, Mont., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] The statutory provision of which it is alleged the contract of the defendant in error is in violation is as follows (we quote from appellant's brief, as its correctness is not questioned):

"It is hereby made the duty of the county commissioners of the several counties of the state of Montana to contract with some newspaper of general circulation, published within the county, and having been published continuously in such county at least six months immediately preceding the awarding of such contract to do and perform all the printing for which said counties may be chargeable, including all legal advertising required by law to be made, blanks, blank books, and official publications, at not exceeding the following prices: * * * All newspapers which may receive any contract for printing under this act which may not be able to execute any part of such

⊙⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contract shall be required to sublet such contract or portion to some newspaper or printing establishment within the state, which may be competent to execute such work, at not to exceed the rates herein mentioned."

This statute has been held to be constitutional and valid by the Supreme Court of Montana in a case involving the validity of the very contract which defendant in error seeks to disavow for the purpose of recovery in the present action. Hersey v. Neilson et al., 47 Mont. 132, 131 Pac. 30, Ann. Cas. 1914C, 963.

The contention presented here is that, notwithstanding the illegality of such contract, the plaintiff is entitled to recover the property delivered to the county, or rather the value thereof; the county having converted the same to its own use.

It will be premised that the plaintiff's contract was and is illegal and void because prohibited by law. The law requires the commissioners of the county to contract with some newspaper of the county, and the newspaper contracted with to sublet, if at all, to some newspaper of the state. The requirement is a prohibition against contracting with any other parties than those specified, and any contract in derogation thereof is nugatory and void.

"The general principle," says the Supreme Court of California, "is well established that a contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void. This rule applies to every contract which is founded on a transaction malum in se, or which is prohibited by statute, on the ground of public policy." Swanger v. Mayberry et al., 59 Cal. 91, 94.

And the Supreme Court of the United States has expressed itself thus:

"The principle is not new; but, on the contrary, it has been frequently announced, commencing in cases considerably over a hundred years old. It was said by Lord Mansfield, in Holman v. Johnson, 1 Cowper, 341, decided in 1775, that: 'The objection that a contract is immoral or illegal as between the plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: Ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.' The cases upholding this doctrine are numerous and emphatic. Indeed, there is really no dispute concerning it." Pullman's Car Co. v. Transportation Co., 171 U. S. 138, 150, 18 Sup. Ct. 808, 43 L. Ed. 108.

[2] It is a doctrine of the courts, however, now well established, that sanction will be given a cause of action proceeding as for quantum meruit, or for recovery of property or in trover, where the property has been converted, aside from the contract and independent thereof, where the contract is merely malum prohibitum, not malum in se nor involving moral turpitude, and does not contravene public policy, and where the statute imposes no penalty for its infraction. This upon the principle that the courts will always try to do justice between the parties where they can do so consistently with adherence to law. Thus it was held, in City of Concordia v. Hagaman et al., 1 Kan. App. 35, 41 Pac. 133, that:

"In the absence of a penal prohibitive statute, on grounds of public policy alone, an express contract entered into between the mayor and council of a city of the second class and one who is at the time a councilman of such city, for the performance of services for the city, will not be enforced. Such contract, while not absolutely void, may be avoided by the city, at will, so long as it remains executory; but when it was entered into in good faith, was for the doing of lawful and necessary work for the city, and has been, without objection, fully executed, the city receiving and retaining the benefit thereof, a recovery may be had on the quantum meruit for what the services were reasonably worth."

See, also, Brown v. City of Atchison, 39 Kan. 37, 17 Pac. 465, 7 Am. St. Rep. 515.

Pelosi v. Bugbee, 217 Mass. 579, 105 N. E. 222, presents a case where a peddler made sale of a diamond ring to a party, under a conditional contract. The ring was subsequently pledged to a pawnbroker. The contract not having been complied with, the peddler sued to recover the property. It was contended that he, being without a license when he sold the ring, could not recover. The action was not upon the contract, but independent thereof, and for the property, and it was said by the court:

"It is clear upon principle and authority that, while the plaintiff cannot enforce the illegal contract, he may maintain an action for conversion."

Parkersburg v. Brown, 106 U. S. 487, 503, 1 Sup. Ct. 442, 455 (27 L. Ed. 238), was a case for recovery against the city of certain realty which had been conveyed to a trustee as security for a loan by the issuance of bonds, which bonds it proved the city had no authority to issue, because the act under which the city authorities proceeded was declared unconstitutional. Of this state of the case the court said:

"There was no illegality in the mere putting of the property by the O'Briens in the hands of the city. To deny a remedy to reclaim it is to give effect to the illegal contract. The illegality of that contract does not arise from any moral turpitude. The property was transferred under a contract which was merely malum prohibitum, and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received."

So it was said in Chapman v. County of Douglas, 107 U. S. 348, 355, 2 Sup. Ct. 62, 68 (27 L. Ed. 378):

"As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown. As was said by this court in Marsh v. Fulton County, 10 Wall. 676, 684 [19 L. Ed. 1040], and repeated in Louisiana v. Wood, 102 U. S. 294 [26 L. Ed. 153], 'the obligation to do justice rests upon all persons, natural and artificial, and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' * * * The purchase itself, as we have seen, was expressly authorized. The agreement for definite times of payment and for security alone was not authorized. It was not illegal in the sense of being prohibited as an offense; the power in that form was simply withheld. The policy of the law extends no further than merely to defeat what it does not permit, and imposes upon the parties no penalty. It thus falls within the rule, as stated by Mr. Pollock, in his Principles of Contract (264): 'When no penalty is imposed, and the intention of the Legislature appears to be simply that

the agreement is not to be enforced, then neither the agreement itself nor the performance of it is to be treated as unlawful for any other purpose.'"

And again, in Pullman's Car Co. v. Transportation Co., supra, the court, quoting from 139 U. S. 60, 11 Sup. Ct. 489, 35 L. Ed. 69 (Central Transp. Co. v. Pullman's Car Co.), says:

"The courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it had no right to retain. To maintain such an action is not to affirm, but disaffirm, the unlawful contract."

See, also, Citizens' National Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443, and Rankin, Receiver, v. Emigh, 218 U. S. 27, 30 Sup. Ct. 672, 54 L. Ed. 915.

The Supreme Court of Montana has adopted this view of the law in principle. In State v. Dickerman, 16 Mont. 278, 40 Pac. 698, the court held that:

"Where a school district contracted for a loan on bonds which were afterwards declared to be void, it is liable for money advanced in good faith under the contract which was used for school purposes."

And in Morse v. Board of Commissioners, 19 Mont. 450, 453, 48 Pac. 745, 746, wherein one of the board of county commissioners sold certain property to the county, contrary to a statute prohibiting such an action, and subsequently the commissioner, whose name was Cain, sold the property to Morse, and Morse having his claim for the value of the property allowed by another board, the question arose whether he was entitled to his claim. Speaking to the subject, the court says:

"The district court held the contract of sale of the property between Cain and the county to be void, because prohibited by statute. This left the title to the property still in Cain. The court did not and could not, by such adjudication, confiscate Cain's property. If, after such adjudication by the district court, the county kept possession of the property and appropriated it to its use, it could not avoid paying the reasonable value thereof, because the contract by which it obtained it was ultra vires, illegal, and void."

[3] Now, while the statute in question directs the county commissioners to contract with some newspaper of general circulation, published in the county, for county supplies, and requires the newspaper receiving the contract to sublet to some newspaper or printing establishment in the state, a noncompliance with either of these provisions would not be an act malum in se, or contrary to public morals; nor is it attended with any penalty because an infraction of the law. And, the county having possessed itself of the supplies, and appropriated them, so that it cannot return them in kind, we are impelled to the conclusion that it is liable in conversion upon the action here instituted; not upon the contract, but independent thereof, for the value of the supplies.

Affirmed.