# PULLMAN'S PALACE CAR COMPANY *v.* CENTRAL TRANSPORTATION COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 20.   Argued January 28, 29, 1890. — Decided March 2, 1891.

Under an indenture in the nature of a lease which includes railway sleeping cars and written contracts for letting them to certain railroad companies, and which provides that if the revenue derived from such contracts shall, by reason of the refusal of any of the railroad companies to permit the cars to be run over their lines of road, fall below the sum agreed in the indenture to be paid quarterly by way of annual rent, the lessee " shall have the right either to declare this contract null and void and surrender " to the lessor the property leased, " or shall and will pay in like manner, in lieu of said sum, such sum or share of the net revenue from the remaining lines of the roads as the parties hereto may at that time agree upon," the lessee, if he makes no election, in case of the revenue, by reason of such refusal of the railroad companies, falling below the sum first mentioned, is no longer liable for that sum, but only for such share of the net revenue from remaining railroads as the parties may at that time agree upon, and, if they do not agree, for a sum to be assessed by the jury in the nature of a *quantum meruit,* not exceeding the whole of such net revenue.

THE case is stated in the opinion.

*Mr. Edward S. Isham* and *Mr. Wayne McVeagh* for plaintiff in error.

*Mr. John G. Johnson* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action of covenant, brought July 30, 1885, by the Central Transportation Company against Pullman's Palace Car Company to recover the rent or sum of $132,000, due for the first two quarters of the year 1885, under the indenture of lease of February 17, 1870, counted on in the other case between the same parties, argued at the same time, and just decided,

*ante,* 24. The plaintiff obtained a verdict and judgment for $119,729.13; and the defendant sued out this writ of error.

In the present action, which was tried before the other was brought, the objection that the contract sued on was *ultra vires* was not pleaded, nor in any way brought to the notice of the court below. The defendant, therefore, is not entitled to avail itself of it upon this writ of error. *Bell* v. *Bruen,* 1 How. 69; *Marine Bank* v. *Fulton Bank,* 2 Wall. 252; *Klein* v. *Russell,* 19 Wall. 433; *Badger* v. *Ranlett,* 106 U. S. 255; *Union Trust Co.* v. *Illinois Midland Co.,* 117 U. S. 434, 463. Whether, under these circumstances, this court, of its own motion, might take this objection need not be considered, because upon another ground the verdict must be set aside and a new trial ordered.

The defendant pleaded only two pleas, the first of which was simply "covenants performed, *absque hoc,*" (according to the form used in Pennsylvania,) which put in issue the performance of the defendant's covenants, as well as the performance of the plaintiff's covenants, as alleged in the declaration, but not the execution or the validity of the contract sued on. *Wilkinson* v. *Pittsburg Turnpike Co.,* 6 Penn. St. 398; *Farmers' & Mechanics' Turnpike Co.* v. *McCullough,* 25 Penn. St. 303.

The other plea set up an agreement between the parties, dated February 27, 1885, which recited the eighth covenant in the original indenture of lease, in these words:

"8th. In the event that any of the railroad companies mentioned in the assigned contracts shall at any time during this agreement refuse to permit the cars of the second party to be run on and over their respective lines of roads, so that, by reason of such prevention or refusal, the profits, income and revenue derived from and under any other remaining contracts with other and remaining railroad companies mentioned in the assigned contracts shall fall below the sum of two hundred and sixty-four thousand dollars, then, and in that event, said second party shall have the right either to declare this contract null and void and surrender to said first party the said hereinbefore demised property, or shall and will pay, in like manner, in lieu of the said sum of two hundred and sixty-

four thousand dollars, such sum or share of the net revenue from the remaining lines of the roads as the parties hereto may at that time agree upon."

The agreement pleaded also recited the refusal of some of the railroad companies therein mentioned to permit the leased cars to run over their roads, leaving only certain lines over which the defendant was still running cars under a contract with the Pennsylvania Railroad Company, which expired January 27, 1885; and that the defendant was negotiating a new contract with that company, the annual income and revenue to be derived from and under which, applicable to the payment of rent under the indenture of lease, would fall much below the sum of $264,000, the rent agreed on in that indenture; and that it had become necessary to modify that indenture in respect to the rent and otherwise.

By this agreement, in consideration of the premises, it was agreed that an annual rent of $66,000, in equally quarterly payments, together with one-fourth of the taxes to be paid by the plaintiff to the State of Pennsylvania, should be paid by the defendant to the plaintiff, in lieu and in stead of the aforesaid sum of $264,000; and other stipulations were made in modification of the original indenture.

The plaintiff filed a replication, denying the making of the agreement pleaded.

At the trial, in June, 1886, the plaintiff gave in evidence its charter and the indenture counted on, and proved that it had received only $33,000 for rent during the six months ending July 1, 1885.

The defendant gave in evidence the agreement pleaded, which was admitted to be under the seals of the two corporations, and signed by the president and secretary of each in its behalf, and to have been executed pursuant to a vote of the plaintiff's board of directors.

The defendant offered other evidence tending to show that the contracts with all the railroad companies had expired, and that those companies had refused to renew them, except on terms less favorable to the defendant, and that by reason thereof the annual income and revenue derived from and

under the contracts remaining in force fell much below the sum of $264,000. This evidence was offered, in connection with the recitals in the agreement of February 27, 1885, for the purpose of supporting one branch of the defence, namely, that if that agreement did not govern the extent of the defendant's liability, yet the plaintiff could recover only a sum equal to the net revenue derived from such contracts. Upon the plaintiff's objection this evidence was excluded, and the defendant excepted to the ruling.

The ground of that ruling appears to have been that there was no evidence to justify the jury in finding "an election, prior to the commencement of this suit, either to return the property rented and held, or to pay over the net earnings referred to in the contract, in case a new contract was not agreed upon by the parties."

The court afterwards submitted the case to the jury upon two questions, (concerning which much evidence had been introduced by both parties,) whether the plaintiff's directors had authority from the stockholders to make on its behalf the agreement of February 27, 1885; and whether the delivery of that agreement was on the understanding that it should take effect immediately, or that it should be conditional upon the approval of the stockholders; and instructed the jury that to warrant a verdict for the defendant both these questions must be answered in the defendant's favor.

But that agreement was admitted to have been executed and delivered in behalf of the plaintiff corporation, in due form, by the proper officers, and under a vote of the board of directors. Even if, for want of assent of the stockholders, it did not bind the corporation as fixing a new rate of compensation, it was competent evidence against the corporation that the contracts with the railroad companies had been terminated, and the revenue derived from such contracts thereby diminished. The rulings and instructions which denied it that effect, and excluded from the consideration of the jury other evidence of those facts, rest upon a misconception of the true scope and meaning of the eighth covenant in the original indenture of lease, above quoted.

The manifest purpose and meaning of this covenant are that, in the event supposed, of any of the railroad companies refusing to permit the defendant's cars to be run over their roads, and of the defendant's income and revenue thereby falling below the annual sum or rent of $264,000, the defendant shall not continue to be liable to pay that rent or sum, but may elect to declare the lease void and to surrender to the plaintiff the leased property, or, if it does not elect to annul the lease, shall pay, in like manner as, and in lieu of, the said sum of $264,000, such sum or share of the net revenue from the remaining lines of road as the parties may at that time agree upon. The alternative required of the defendant is not that the defendant shall elect to avoid the lease, or shall elect to pay a share of the net revenue; but the alternative is to declare the lease void, or to pay a share of the net revenue. The only affirmative election contemplated, as affecting the extent of the defendant's liability, is an election to declare the lease void. If the defendant, in the event supposed, elects to declare the lease void, it is no longer liable for any rent whatever. If it does not elect to declare the lease void, it is no longer liable for the original rent, but, by the express terms of the covenant, and without any further act or election on its part, it is bound to pay such sum or share of the net revenue from remaining railroads as the parties may at that time agree upon. If the parties do not agree upon that sum or share, the sum which the defendant shall pay must, of course, as in all like cases, be assessed by the jury, in the nature of a *quantum meruit*, depending upon the benefits received by the defendant, and cannot possibly exceed the whole of the net revenue received by the defendant from the remaining railroad contracts.

The erroneous exclusion of the evidence offered by the defendant, and above stated, directly affecting the amount which the plaintiff by the terms of the original lease was entitled to recover, requires the verdict to be set aside and a new trial ordered; and there is no occasion to consider whether there was any error in the rulings and instructions of the court concerning the questions afterwards submitted to the jury, because

upon another trial the case may be presented in a different aspect.

*Judgment reversed, and case remanded, with directions to set aside the verdict and to order a new trial.*

MR. JUSTICE BROWN, not having been a member of the court when this case was argued, took no part in its decision.