[S. F. No. 764.  Department Two.—March 18, 1899.]

S. M. BUCK, Respondent, *v.* CITY OF EUREKA, Appellant.

MUNICIPAL CORPORATION—VOID CONTRACT FOR SERVICES OF ATTORNEY—
IMPLIED CONTRACT.—QUANTUM MERUIT.—An attorney who has rendered services to a municipal corporation of which it has accepted the benefit, in defending an action against it, and prose-

cuting an appeal in another cause, for its benefit, though rendered under a void contract made while such attorney was the city attorney, may recover under an implied contract, upon a *quantum meruit* for the value of the services rendered by him after the expiration of his term of office as city attorney.

ID.—CORPORATE ACT NOT REQUIRED.—It is not necessary that the knowledge or assent of the city council be evidenced by any formal corporate act. or vote, or resolution of the board, or any written instrument, to sustain an implied contract for services, which is within the scope of the powers of the council; and where the authority existed in the council to employ the plaintiff, after he ceased to be city attorney, and his services were performed with the full knowledge of the council, and with their assent as given when plaintiff presented his bill, he may recover upon an implied contract for the value of his services.

ID.—NONSUIT—CONDITIONAL PAYMENT IN FULL.—Where the testimony of the plaintiff shows that when payment was made for services in a case not concluded, there was an understanding that he was to continue his services to the end of the cause without further payment, if his bill for other services rendered at the same time was paid, but if not paid, he would expect further compensation, and that such other bill was not paid, there is sufficient evidence to sustain an additional recovery for the further services as against a motion for a nonsuit.

ID.—LIABILITY OF CITY—UNAPPROPRIATED REVENUES—IMPLIED LIABILITY—CONSTRUCTION OF CONSTITUTION.—An implied liability of a city is within the restriction of section 18 of article XI of the constitution, forbidding the incurring of any indebtedness or liability exceeding in any year the income and revenue provided for it for such year, and making such indebtedness or liability void. The validity of the implied liability depends upon the fact that there were unappropriated revenues when the liability was incurred; and no judgment can be entered thereupon until that fact is established.

ID.—TIME OF INCURRING IMPLIED LIABILITY—EVIDENCE—CONDITION OF REVENUES.—The implied liability was incurred when from time to time the services were fully rendered, and the city, with knowledge, accepted the benefit of them, and evidence should be received of the condition of the revenues at that time.

APPEAL from a judgment of the Superior Court of Humboldt county and from an order denying a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion.

A. J. Monroe, for Appellant.

F. A. Cutler, and George A. Knight, for Respondent.

CHIPMAN, C.—Action on an implied contract for the value of services as attorney at law. The cause was tried by a jury, and plaintiff had the verdict and judgment thereon for four thousand seven hundred dollars, from which and from an order overruling defendant's motion for a new trial, defendant appeals.

Plaintiff sues on *quantum meruit*, setting forth in his complaint a claim for services rendered defendant between July 12, 1886, and March 30, 1889, of the alleged value of ten thousand dollars, in defending a suit which was then pending against defendant in the circuit court of the United States, at San Francisco, wherein one Wing Hing was plaintiff. In a second count plaintiff claims for services rendered on and after August 5, 1889, of the value of five hundred dollars, in prosecuting an appeal in this court, in a cause entitled *People v. Barney Croghan*. Plaintiff's prayer is for seven thousand dollars, with interest from December 13, 1889.

Defendant made a general denial by answer, and to the first cause of action further answered that if defendant incurred any liability, it was in excess of the income and revenue provided for defendant for any of the years during which the alleged services were performed, and was, therefore, invalid. The same answer is made as to plaintiff's second cause of action. A further defense is made to the first cause of action, that on February 8, 1886, plaintiff was the duly appointed and authorized attorney of defendant; that on said day defendant entered into a contract with plaintiff, by an ordinance that day passed, whereby plaintiff was employed to act for defendant in said case of *Wing Hing v. City of Eureka;* that said contract was illegal and void, and that plaintiff's said services were rendered under said contract and not otherwise, and said contract has not been rescinded, but is still subsisting.

1. The case, so far as it involves the first cause of action, was here once before. In the complaint at that time plaintiff claimed under an express contract embodied in the ordinance now pleaded by defendant and which will be found set out in the former opinion. Plaintiff was the city attorney when that ordinance was passed, and went out of office July 13, 1886, but continued to manage the Wing Hing case to its conclusion. He

sued, however, for services during the entire period of his employment, under this contract. It was held on the first appeal that he could not recover, because the contract was void. But the court said "that if the facts would warrant it, plaintiff should recover, not upon the original or void contract, but upon an implied one, for services rendered after the expiration of his term of office"; and the judgment was reversed, with directions to the trial court to permit plaintiff to amend his complaint. (*Buck v. Eureka,* 109 Cal. 504.) The law of the case is thus settled to be that plaintiff may recover upon an implied contract for services rendered after the expiration of his term of office— *i. e.,* after July 12, 1886. The Wing Hing suit was for one hundred and thirty-two thousand dollars damages alleged to have accrued to fifty or sixty different Chinamen who had been driven out of the city of Eureka by a mob. Plaintiff testified that he continued to manage the defense after July 12, 1886, and to the close of the litigation, March 2, 1889, in which the city prevailed; no notice was given to him by the council, or by his successor in office, that his services were dispensed with; it was known to the members of the council that he was performing the services; the labor performed was in the examination of the facts applicable to each of the fifty-six counts in the Wing Hing suit, preparation of a brief of the law governing the case, and in making many trips to San Francisco in connection with the suit at his own expense; three-fourths of the actual labor was performed after July 12th, and was of the value of seven thousand five hundred dollars. Plaintiff further testified that after he ceased to be the city attorney he had conversations with different members of the council relating to the Wing Hing case, two of whom he named; they desired to know how he was getting along with the case, and when told seemed pleased with the progress made; he had conversations with other members of the council, but could not name particularly any but Councilmen Mercer and Monroe; he also explained the situation of the case to his successor in office; he testified as to one of the councilmen: "He came to know how the matter was getting along and the council would like to know—gave me to understand that the council had discussed the matter and expressed a desire to know something about it, and he wanted to inter-

rogate me for that purpose, and I told him how the matter was getting along." Again he testified: "I was always given to understand by members of the council that my services were satisfactory; they never made any objection." He further testified: "I never made any report to the council in regard to this suit and was never asked to, until I finally reported that I had recovered judgment in favor of the city. . . . . That was the first written report." He was asked by counsel for defendant if he had any official communication with the council about the matter during the period from July 12, 1886, to March, 1889, and answered: "Only in the way I have mentioned, by speaking to the different councilmen and giving them information in regard to it." Plaintiff's deposition was taken before the trial commenced. In it defendant's counsel asked the witness to state how the council expressed its satisfaction with his services. He replied: "Members of the council at different times expressed themselves satisfied, and finally, when the case was terminated and I presented my bill, there was no expression of dissatisfaction in regard to my services—on the contrary, the services were considered by all the councilmen with whom I conversed at that time, very satisfactorily [*sic*] indeed, and they all expressed themselves willing to pay me, but they never did." Upon cross-examination defendant showed the original employment of plaintiff by the ordinance; a portion of the unverified complaint of plaintiff was introduced claiming on contract under that ordinance; some of the testimony of plaintiff at the first trial was also introduced tending to show that he claimed under contract, and he was searchingly cross-examined as to whether he was not still claiming under that contract or was ever employed otherwise than through this ordinance—contract —which was held to be void. Witness could not and did not deny that the first trial was based upon his employment by that ordinance. He replied: "I wish simply to add to that, as I said then, that I didn't know whether it was a contract or not, but I considered it an employment under that ordinance; that I was to have full charge of the case . . . . until judgment was finally obtained in favor of the city. Of course after the 13th of July I was discharged as city attorney and continued in the case with the knowledge and consent of my successor and the

city council." There was evidence adduced by defendant tending to contradict plaintiff's testimony, creating a clear conflict upon some points; indeed, upon some facts the preponderance seems to be with defendant—but we are not at liberty to attempt a reconciliation of this conflict.

Plaintiff is not claiming under the original contract at this time, nor does he seek to make it the basis of his implied contract. He now claims under a contract which the law has made for him, and which this court in the former appeal said he may do, although he first claimed under a void contract. The cases cited by appellant arose either where no authority existed to enter into an express contract or do any acts from which a contract might be implied, or they were cases where the mode was the measure of the power. But where, as here, the authority existed in the council to employ plaintiff after he ceased to be city attorney, he may recover upon an implied contract for the value of his services. Nor is it necessary, as is contended by appellant, that the knowledge or assent of the council be evidenced by some formal corporate act, as by ordinance. Implied contracts, within the scope of the powers of the council, may be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing. (Dillon on Municipal Corporations, sec. 463, and cases cited in note 1; 15 Am. & Eng. Ency. of Law, 1102.)

It was recently held by this court, in a case where the facts as to the knowledge of the board and its assent to the employment of the attorney were not unlike the facts here, that no resolution of the board authorizing the services was necessary. (*Power v. May*, 123 Cal. 147.)

It is not disputed that plaintiff performed service of much value, in good faith believing he was under legal employment. The evidence tends to show that these services were performed with full knowledge of the council and with their assent as given when plaintiff presented his bill. "Where work done for a corporation purpose without complete legal authorization is for a corporate purpose and is beneficial to it, and the price reasonable, strong evidence of the assent of the corporation is not required." (1 Dillon on Municipal Corporations, sec. 464.)

We think the evidence is sufficient to raise an implied promise to pay the reasonable value of the services.

2. It is claimed that the motion for nonsuit as to plaintiff's second cause of action should have been granted because of insufficiency of evidence to make a *prima facie* case for recovery. It appears from the evidence that plaintiff was paid five hundred dollars for services in *People v. Croghan*, but he testified that when this payment was made it was understood by the council that the case was not concluded, and plaintiff agreed to continue his services to the end in that case without further fee if his bill for other services, rendered at the same time, was paid; but if not paid (as it appears it was not) he would expect further compensation in the Croghan case. We think there was sufficient evidence for the jury as against a motion for nonsuit.

3. Defendant assumes that plaintiff's services extended over a period of three years from July 12, 1886, and upon that assumption makes an arbitrary division of the judgment into three parts, and asks that it be modified so as to make each of these several parts payable out of the funds in the city treasury for the three years severally. Error is also claimed because the court excluded defendant's evidence that the liability incurred was in excess of the revenues for these years.

At the trial an effort was made to agree upon the amount of funds in the treasury from time to time during these years, but it failed, and finally the court refused all testimony on the question, holding that the term "liability," used in section 18, article XI, of the constitution, does not refer to an implied liability such as is the basis of this action. When this case was here on the second appeal (see *Buck v. Eureka*, 119 Cal. 44) the question related to the form of the judgment, and upon the authority of *Higgins v. San Diego*, 118 Cal. 524, it was held that it should be in form a general judgment. This disposes of a part of defendant's objection above stated. In speaking of the question as to whether the liability is within the inhibition of the constitution, Mr. Justice Temple, for the court, said: "If the constitutional restriction is plain, it is not for the court to refuse to obey it because it is unwise or impolitic. If the liability was contracted by the city it is within the inhibition." It was suggested, however, that the point might not necessarily arise in that appeal, as it was from the form of the

judgment only. The question is clearly presented in this appeal. Without entering upon the argument we think that the term "liability" includes implied contracts such as the one here involved. The learned trial judge was, therefore, in error in the reason he gave for excluding the evidence. It remains to consider the materiality of the evidence. In *Higgins v. San Diego, supra,* the court said: "Our former opinion is also modified as follows: We cannot direct the superior court to enter a judgment upon the findings for the reasonable value to the city of the water company's plant and of water supplied, because it does. not appear that the claims of the water company all accrued at a time when there were unappropriated revenues to meet them, and it will be necessary for the court to ascertain, as the basis of its judgment against the city, just when the claims of the water company for reasonable value of use, et cetera, equaled the amount of unappropriated revenues for the respective fiscal years during which the city had the use of the water company's plant. Claims for use of plant and value of water supplied after such time are like other claims upon exhausted revenues; they are void, and will not warrant a judgment of any character." In a concurring opinion Mr. Chief Justice Beatty said: "In determining the validity of the obligation, it will, of course, always be necessary to inquire whether at the date of its assumption there were appropriated revenues to meet it, because if there were not there will be no liability resting upon the city, and the claimant will have no right to a judgment in any form." It would thus appear that the validity of the liability depends upon the fact as to whether there were unappropriated revenues when the liability was incurred; and no judgment should be entered until that fact is established. The liability was incurred when from time to time the services were fully rendered, and the city with knowledge accepted the benefit of them (*State v. McCauley,* 15 Cal. 429; *McBean v. Fresno,* 112 Cal. 159; 53 Am. St. Rep. 191); and evidence should be received as to the condition of the revenues at that time. The defendant offered such evidence. We think it was material, and that it was error to exclude it. To hold otherwise would be inconsistent with holding, as we do, that the liability is within the constitutional inhibition.

Appellant assigns certain errors in the admission or exclusion of testimony, but they do not seem to call for special notice.

It is also claimed that the court erred in its instructions to the jury, and in refusing certain instructions asked by defendant, and in striking out portions of others. We have carefully examined these assignments; they are numerous and would occupy much space in any intelligent statement of them. Some of the objections arise out of questions already disposed of in this opinion; others upon points as to which the court had in other parts of its instructions fully advised the jury; others where slight, but immaterial, modifications of defendant's instructions were made. Taken as a whole, we think the instructions fairly gave the law of the case to the jury without prejudicial error.

For the error above stated we think the judgment and order should be reversed, and so advise.

· Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

McFarland, J., Temple, J., Henshaw, J.

· Hearing in Bank denied.