[Civ. No. 3844.   Third Appellate District.—July 26, 1929.]

PHEBE M. RIDEOUT, Petitioner, v. HARVEY EICH, County Treasurer, etc., Respondent.

Brobeck, Phleger & Harrison, Warren Steel and Homer Lingenfelter for Petitioner.

Peirce Coombes and McKinstry, Haber & Firebaugh for Respondent.

Russell P. Tyler, *Amicus Curiae*.

PLUMMER, J.—This cause is before us upon the petition of the above-named Phebe M. Rideout seeking a mandatory writ from this court directing the payment to her of the sum of $24,811.14 in cash, by the respondent herein, as treasurer of the county of Yuba.

The petitioner's cause of action is based upon a certain agreement dated the fourteenth day of May, 1929, entered into between the petitioner as the party of the first part and the board of supervisors of the county of Yuba, as the party of the second part. This agreement is in the words and figures following, to wit:

"Witnesseth: Whereas, under date of February 8, 1923, the parties hereto executed a certain indenture in the words and figures following, to-wit": (here follows the agreement, Exhibit "A" herein), "which is the instrument of lease and purchase entered into between the petitioner herein and the board of supervisors of the county of Yuba, whereby the petitioner agrees to erect a certain memorial building on the

premises described in the instrument, and to lease the same to the county of Yuba for a period of five years and six months, at a rental of $2,500 per month; and also, the payment by the party of the second part of certain other items set out in the agreement; and providing, further, that in consideration of the sum of $1, the party of the first part agrees to sell to the party of the second part the leased premises for the sum of $167,500; and further providing that the rentals paid for the premises shall be considered as payment on the purchase price of the property referred to and covered by the lease.'' (Exhibit ''A'' also includes a resolution of the board of supervisors of the county of Yuba purporting to authorize the execution of the lease and option to purchase by the president and clerk of the board of supervisors.) ''and Whereas, first party has done and performed everything by said indenture stipulated to be by her done or performed, and said 'Veterans Memorial Building' was accepted by second party on the 5th day of February, 1925, on which last mentioned date second party entered into possession thereof, and has since used and occupied the same, and has paid unto first party under the terms of said indenture, the sum of one hundred thirty-two thousand one hundred seventeen and 45/100 dollars ($132,117.45); and Whereas, on said 5th day of February, 1925, said Board of Supervisors passed and adopted a resolution in the words and figures following'': (Here follows the resolution, Exhibit ''B'' herein, which is as follows:)

'' 'It appearing to the satisfaction of this Board that Phebe M. Rideout has caused to be constructed the Veterans Memorial Building mentioned and referred to in that certain agreement made and executed by and between her and the County of Yuba, in the State of California, on the 8th day of February, 1923, in accordance with the terms of said agreement, and has acquired title to the real property in said agreement referred to, and that all thereof are now ready for acceptance and occupancy by said County in accordance with the terms of the agreement aforesaid:

'' 'It is Hereby Resolved, that said contract has been fully complied with on the part of said Phebe M. Rideout and said structure, namely, said Veterans Memorial Building, and the real property in said contract referred to, be, and the same

hereby are accepted by this Board on behalf of said County of Yuba;

" 'Be it Further Resolved, That the said lease referred to in said agreement be and the same hereby is accepted by this Board on behalf of said County, the term thereof to commence on the 5th day of February, 1925, and that the option to purchase in said agreement mentioned and made a part of said lease, be, and the same hereby is, accepted by said Board on behalf of said County;

" 'And it Further Appearing to This Board that the total cost of said Auditorium and said land referred to in said agreement is the sum of $155,441.11;

" 'Therefore, it Is Hereby Resolved, That this Board on behalf of said County hereby orders and directs that there be paid to said Phebe M. Rideout, out of the County Treasury of said County, upon said option to purchase, the sum of $39,693.76, and F. H. Greely, auditor of said County of Yuba, is hereby directed to forthwith draw his warrant upon the County Treasury of said County of Yuba in favor of said Phebe M. Rideout for said sum last aforesaid.'

"And Whereas, an action has been commenced in the Superior Court of the State of California, in and for the County of Yuba, by one F. W. Johnson, as plaintiff, against the said County of Yuba and various of its officers as defendants, wherein the said plaintiff as a tax-payer seeks to have the said County of Yuba and certain of its officers enjoined from expending any further moneys under said indenture, and to have said indenture declared void; and

"Whereas, by reason of the matters and things hereinbefore recited various and sundry doubts and a controversy exists between the parties hereto as to their respective rights and liabilities under said indenture and their respective performance of the terms thereof; and

"Whereas, second party, to avail itself of the provision of section 4041–F of the Political Code of California, originally entered into said indenture and made the payments to first party as aforesaid, and desires now to avail itself of the provisions of said Section 4041–F of the Political Code of California, by purchasing from first party the said land mentioned in said indenture, together with the improvements thereon, viz.: said 'Veterans Memorial Building,' and first party is willing to sell the same to second party for the sum

of one hundred fifty-six thousand nine hundred twenty-eight and 59/100 dollars ($156,928.59), and such present purchase is advisable in the best interests of said County of Yuba;

"Now, Therefore, it is mutually agreed as follows:

"First: Said indenture executed by and between the parties hereto, and dated February 8, 1923, is hereby cancelled, terminated and rescinded.

"Second: Second party agrees that said sum of one hundred thirty-two thousand one hundred seventeen and 45/100 dollars ($132,117.45) heretofore paid by second party to first party as aforesaid may be retained by first party on account of the purchase price of the said real property and improvements, and agrees forthwith to pay to first party in cash the balance of said purchase price, to-wit: the sum of twenty-four thousand eight hundred eleven and 14/100 dollars ($24,811.14).

"Third: First party agrees, upon receipt of said sum of twenty-four thousand eight hundred eleven and 14/100 dollars ($24,811.14) in cash, to convey to second party by a duly executed and acknowledged grant deed, said real property and improvements, free and clear of all liens and encumbrances except the lien of current taxes not delinquent.

"Fourth: In consideration of the preceding stipulations of this instrument and the said present sale and conveyance of said real property and improvements by first party to second party, as aforesaid, each of the parties hereto does hereby release and forever discharge the other of and from all claims and demands, actions, and causes of action of every kind and nature, so that neither of them shall have any claim on the other, directly or indirectly, arising from said indenture dated February 8, 1923, or from any act or thing undertaken, done or omitted or attempted to be done pursuant thereto.

"This instrument, and all the provisions thereof, is intended by the parties to be whole and entire and no provision nor any part thereof is intended to be severable but the considerations moving to the respective parties hereunder are received, and this instrument is executed by said parties, in contemplation of one whole and entire and non-severable disposition of the matter and things, aforesaid, the subject matter hereof.

"In Witness Whereof, the parties hereto have executed these presents the day and year first above written." (Signed by the respective parties thereto.)

The record discloses that the respondent refused to pay the warrant issued to petitioner by the auditor of the county of Yuba, under the direction of the board of supervisors, on the ground that the agreements referred to herein are invalid. The petition sets forth the legal existence of the board of supervisors of the county of Yuba, and the personnel constituting the same; that prior to the thirtieth day of June, 1925, no money had been raised by taxation, as provided by the act of the legislature, authorizing the leasing, building and purchasing of a building to be used by the American Legion, and other patriotic organizations, as a home or meeting place; that since said date there has been raised, by the·levy of a tax, as provided in said act, and by moneys transferred from the general funds of the county into a fund called the Veterans Memorial Fund of said county, the sum of $158,093.85; that at the date of the issuance of the warrant in favor of the petitioner herein, there was in said Veterans Memorial Fund a sum of money in excess of $25,000. Other matters are set forth in the petition, such as the publication of notice of intention to purchase and of the fact that the agreements herein referred to were all executed in good faith. The petition also shows that other than as to the $25,000 just referred to in the Veterans Memorial Fund, there was not, on the fifth day of February, 1925, nor at any time during the fiscal year from July 1, 1924, to June 30, 1925, the sum of $155,441.11 mentioned in the resolution of the board of supervisors of that date, in the treasury of said county, applicable to the purchase of said property, and said sum was in excess of the income and revenue of said county of Yuba provided for such year and available for payment to the petitioner under the terms of the agreement of lease and purchase called Exhibit "A"; that no election was ever held for the purpose of determining whether any indebtedness should be created by the issuance of bonds to raise money for the erection of the building referred to in the agreements, or any memorial building. The petition further sets forth that on or about the eleventh day of December, 1928, an action was commenced in the Superior Court of the State of California, in

and for the county of Yuba, to enjoin the officers named therein as respondents, from expending any further money under the agreement of lease and purchase, on the ground that said agreement was a violation of section 18 of article XI of the Constitution, and also seeking the judgment of the court that the respondent in this action repay to the county treasury of the county of Yuba all moneys paid out under and by virtue of the agreement of lease and purchase amounting to the sum of $132,117.45. To the petition the respondent filed a general demurrer, and the cause is now before us upon the legal issues involved.

Basing his argument upon the cases of *City and County of San Francisco* v. *Boyle,* 195 Cal. 426 [233 Pac. 965], and *Mahoney* v. *City of San Francisco,* 201 Cal. 248 [257 Pac. 49], the respondent contends, and the petitioner acknowledging the application of the reasoning of those cases as applied to the agreement of lease and purchase, practically admits that the agreement of lease and purchase entered into between the petitioner herein and the board of supervisors of the county of Yuba on the eleventh day of December, 1923, and accepted and ratified by the board of supervisors of the county of Yuba on the fifth day of February, 1925, is void, as being in contravention of section 18 of article XI of the Constitution. The theory of the petitioner's claim herein is that the instrument hereinbefore set forth as Exhibit ''D'' and entered into between the petitioner and the board of supervisors of the county of Yuba on the fourteenth day of May, 1929, is valid as being an instrument of purchase and sale involving only the sum of $24,418.14 in cash, which sum was in the Veterans Memorial Fund in the treasury of the county of Yuba at the date of the execution of this instrument. It is further contended that this instrument stands alone; that it is not based upon the original agreement of lease and purchase; and that therefore the void character of the agreements previously entered into between the parties cannot and does not affect the right of the petitioner to the sum of $24,418.14 represented by the warrant issued to her as the balance of the purchase price of the building referred to in the respective instruments. This argument is based in part upon the following paragraph contained in Exhibit ''D,'' to wit: ''Whereas, by reason of the matters and things herein recited various and sundry

doubts and a controversy exists between the parties hereto as to their respective rights and liabilities under said indenture'' (referring to the previous agreement of lease and purchase) ''and their respective performance of the terms thereof.'' This, followed by the citation of a number of authorities to the effect that boards of supervisors are clothed with the power of compromising claims against the county, and that the agreement known as Exhibit ''D,'' wherein the county purports to buy, and the petitioner to sell to the county the memorial building, is a compromise of a claim against the county. Whether any claim has been filed against the county does not appear from the record in this cause, and we do not find anything therein in support of such contention. ■ However, if the agreement to which we have just referred be denominated a compromise and adjustment of the controversy between the parties, we think, even though the authorities cited by the petitioner apparently support the contention that boards of supervisors possess the power to compromise and settle and adjust claims against the county, it does not follow that a board of supervisors may, by way of compromise, give a legal status to a claim against the county which is otherwise void; that while boards of supervisors may compromise contested claims and agree upon the amount legally due, no validity can be given in this manner to an illegal claim. The agreement of the board of supervisors to pay a certain amount upon an otherwise illegal claim does not render such claim legal. ■ Furthermore, a board of supervisors cannot escape the results of its illegal acts by way of compromise with the other party to the illegal transaction, nor can a board of supervisors, by way of compromise, eliminate the prohibitory provisions of section 18 of article XI of the Constitution. In other words, if the agreement of lease and purchase entered into between the petitioner and the board of supervisors of the county of Yuba was rendered void by the prohibitory provisions of the Constitution, no act of compromise on the part of the board of supervisors, in relation to the transaction, could give validity thereto or endow the petitioner with any right to the retention of any moneys illegally obtained from the county under and by virtue of the void agreement.

■ That the original agreement was and is void by reason of the prohibitory provisions of the Constitution declaring void any contracts calling for the expenditure of money beyond the revenues provided, further appears by the reasoning found in the case of *Arthur* v. *City of Petaluma*, 175 Cal. 216 [165 Pac. 698]. In that case we find the following with reference to section 18 of article XI of the Constitution: "that constitutional provision means not only that an indebtedness incurred contrary to its provisions is absolutely void, but that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income and revenue of any future year."

Again, the contention of the petitioner that the contract dated May 14, 1929, stands alone and is not in anywise dependent upon the original agreement, does not appear to us to be well taken. The contract of May 14, 1929, provides for the retention by the petitioner of the sum of $132,117.45 paid to her upon the void agreement. In other words, it gives vitality to such illegal payments and overlooks entirely all questions as to whether that sum of money is or ever was legally applicable to the purchase of the property for which the balance of $24,811.14 was to be paid. That Exhibit "D" does not stand alone is further shown by the fact that Exhibit "B" incorporated therein, provided for payment on the option to purchase of the sum of $39,993.76. This was provided for on the fifth day of February, 1925, the date upon which the lease and agreement to purchase was to begin to operate and upon which date there was no such sum of money due on account of rentals if it could be otherwise contended that the original instrument was only one of leasing. The petitioner admits that on the date of this payment on account of the option to purchase, no provision had been made by the board of supervisors relative to the revenues of the county, as provided by section 18 of article XI of the Constitution. It is further contended that the contract or agreement of May 14, 1929, does not violate any of the provisions of section 18 of article XI, in that there was and is in the county treasury of the county of Yuba, in the Memorial Fund, a sum in excess of $25,000. If nothing further were involved, petitioner's contention might be admitted, but it eliminates the real meat of the controversy,

that is, that the board of supervisors may illegally pay out all but a minor portion of the purchase price of the property involved, and then, by making payment of an amount slightly below the money at their disposal, legalize the whole transaction and validate what the Constitution declares to be void. If this can be done, even in good faith, then and in that case the constitutional prohibition contained in the section referred to is meaningless. The purchase price of the property was really and in fact not the balance of 24,000 and odd dollars, but that sum of money including all that had been previously illegally paid. The circumstances of this case distinguish it from the principle involved in the case of *Buck* v. *City of Eureka,* 109 Cal. 504 [30 L. R. A. 409, 42 Pac. 243], Id., 124 Cal. 61 [56 Pac. 612], and *Higgins* v. *San Diego Water Co.,* 118 Cal. 524 [45 Pac. 824, 50 Pac. 670], and *Higgins* v. *City of San Diego,* 131 Cal. 294 [63 Pac. 470]. Likewise, the circumstances are distinguishable from those involved in the case of *Pullman's Palace Car Co.* v. *Central Transp. Co.,* 139 U. S. 62 [35 L. Ed. 69, 11 Sup. Ct. Rep. 489], and the case of *Chapman* v. *Douglas County,* 107 U. S. 348 [27 L. Ed. 378, 2 Sup. Ct. Rep. 62, see, also, Rose's U. S. Notes], and the case of *Sacramento County* v. *Southern Pac. Co.,* 127 Cal. 217 [59 Pac. 568, 825]. Those actions involved *quantum meruit* for work and labor performed and for materials furnished or rescission. This is not an action for restitution and accounting, but is simply a petition asking for a writ of mandate to compel payment upon a contract entered into, having as its basis, as we have said, prior void contracts and in effect, if not by intent of the parties, avoiding the consequences of an illegal transaction. Furthermore, the record does not show that title has passed, and it further appears that title did not pass only as coincident with the payment of the warrant involved in this action. As to the liability of the county for the occupancy of the premises, though argued in the briefs, we need only to state that the record presents no such question for decision nor do we need express any opinion as to whether section 4005 of the Political Code is applicable to any claim that might be presented by the petitioner.

Again, the Political Code prescribes the method for disposition of moneys belonging to a county. Subdivision 6, section 4101, specifies that money shall be drawn out of the treasury only upon warrants based upon orders. That is

the only method by which 132,000 and odd dollars could be applied upon the purchase price of the property involved.

By the stipulation of the parties to this action and by the petition on file, it is made to appear that the $132,117.45 is involved in litigation now pending in the Superior Court of Yuba County, and that the treasurer of the county, the respondent herein, is enjoined from paying out any money under the provisions of the original agreement. If the petitioner's contention could be held valid that the $24,811.14 is supported by a valid agreement in nowise dependent upon the preceding transactions, then and in that case a judgment of the trial court affecting the payment of $132,117.45, apparently paid without authority of law, would not be affected by the issuance of a writ of mandate herein.

It is needless to cite authorities to the effect that ratification of a contract, originally void by reason of the prohibitory provisions of the Constitution, cannot be had. Ratification presupposes a power equivalent to previous authority. (*Zottman* v. *San Francisco*, 20 Cal. 97 [81 Am. Dec. 96]; 7 Cal. Jur., pp. 515, 516, sec. 88.) Section 1608 of the Civil Code is likewise applicable here so far as it applies to the payments already made upon the contract, and made preceding May 14, 1929. The principle announced in many cases that the mode provided measures the power for action by the board of supervisors, applies to this case, and there is no mode provided authorizing a board of supervisors, by a subsequent contract, to waive the return of money illegally paid out by the county treasurer, even though paid following illegal orders entered by the board of supervisors. The noble purpose of the petitioner in this case and the good faith of the board of supervisors are fully appreciated, but we cannot give consideration to those matters where the question is one of constitutional law.

Nothing contained herein is intended as an intimation that, if the moneys referred to were in the treasury of Yuba County, the board of supervisors would not, or does not, possess the power and authority to make purchase of the property involved for the purposes mentioned in section 4041f of the Political Code.

The writ is denied.

Finch, P. J., and Thompson (R. L.), J., concurred.