[Civ. No. 4046. Third Appellate District.—May 12, 1930.]

PHEBE M. RIDEOUT, Petitioner, v. HARVEY EICH, as County Treasurer, etc., Respondent.

Brobeck, Phleger & Harrison, Warren Steel and Homer. Lingenfelter for Petitioner.

E. S. Norby and Russell P. Tyler for Respondent.

THOMPSON (R. L.), J.—This is a petition for a writ of mandate to compel the county treasurer of Yuba County to pay the purchase price of a Veterans' Memorial Hall at Marysville, which had been contracted for by the board of supervisors.

The petition alleges that the board of supervisors duly levied a tax upon the assessable property of that county in 1922 and each succeeding year until 1929, at a rate not to exceed three mills per dollar of the assessable value thereof,

for the purpose of creating a fund with which to purchase an assembly hall for the use of the honorably discharged veteran soldiers, sailors and marines who had served in wars for the United States; that the fund thus created, aggregating the sum of $158,093.85, was set apart and paid into a special veterans' memorial fund; that, on December 3, 1929, pursuant to section 4041f of the Political Code, the board of supervisors duly adopted a resolution to purchase from the petitioner lots 5, 6 and 7 of block 9, range F, as designated on the recorded map of Marysville, Yuba County, California, together with the Veterans' Memorial Hall and improvements thereon, for the sum of $150,000; that notice of the intention to purchase this property was given and published as required by law; that pursuant to said notice and proceedings, the board of supervisors, on January 7, 1930, met and consummated the purchase by the execution of a written agreement therefor and adopted a resolution to pay the grantor the consideration of $150,000, and at the same time the petitioner executed and delivered to the county of Yuba a good and sufficient deed of conveyance to said property; that the petitioner's claim for said purchase price was then duly filed and approved by the board of supervisors and the auditor of said county thereupon drew his warrant upon said special veterans' memorial fund for said amount, which was presented to the treasurer on February 4, 1930, and payment was refused.

· By an order of court F. W. Johnson, a resident and taxpayer of Yuba County, was authorized to appear in said proceedings as an intervener. Both the respondent and the intervener filed separate answers to said petition. The intervener, by way of answer, alleged that the board of supervisors adopted a budget for Yuba County for the fiscal year beginning July 1, 1929, at which time there was on deposit with the county treasurer, in a special "Veterans' Memorial Fund" the sum of only $25,000 and that on September 3, 1929, the petitioner paid into said fund the further sum of $132,117.45, which last-mentioned sum had been previously paid to her by the county of Yuba, pursuant to a former agreement to purchase the same property for a similar consideration; that in transferring said sums from

the special "Veterans' Memorial Fund" to the general county budget fund for the purpose of paying for said property the said special fund was entirely exhausted; that the resolution which formed the basis for creating said special memorial fund provided specifically for "Capital Outlay, three lots and building to be purchased under provisions of section 4041f, Political Code, and/or settlement of claim for past County use and occupation thereof, $158,093.85 Veterans' Memorial Building Fund"; that in adopting the county budget for the fiscal year beginning with July 1, 1929, the board of supervisors failed to itemize the proposed expenditures included within the term "Capital Outlay" as required by section 3714 of the Political Code; that on January 7, 1930, at the time of the consummation of the purchase of said property the said "Veterans' Memorial Fund" did not contain the sum of $150,000 with which to purchase said property, but that said fund had been previously completely exhausted and that the incurring of said obligation to purchase the Veterans' Memorial Hall property was, therefore, violative of article XI, section 18, of the state Constitution and void.

The answer of the respondent adopted and alleged each of the foregoing assertions of the intervener, except that he admitted that on September 3, 1929, there was and now is in said memorial fund the sum of $158,093.85.

It was stipulated that the records and proceedings of a former similar petition for writ of mandate between the same parties, designated Civil No. 3844, which was decided by this court July 26, 1929, and is reported in 100 Cal. App. 135 [280 Pac. 140], be considered as evidence in this proceeding; that the Yuba County budget for the fiscal year beginning July 1, 1929, showed under the classification: "Veterans Memorial Building, CAPITAL OUTLAY; 3 Lots & Building to be purchased under provisions of Sec. 4041f Political Code and/or settlement of claim for past County use and occupation thereof, (Amount) Requested, $158,093.85; (Amount) Allowed by Board of Supervisors, $158,093.85; Name of fund, Veterans Memorial Bldg. Fund"; that the resolution of the board provided "that the following appropriations for capital outlays, set forth

in said budget, be and the same are hereby specifically made for said fiscal year . . . [here follows a quotation of the foregoing language of the budget classification], and notwithstanding the appropriations for capital outlays, herein specifically set forth, that each and every item of said budget classified and appropriated for capital outlay for said fiscal year be and the same is hereby specifically appropriated in the amount and for the purpose or purposes in said budget provided for such item''; that after the adoption of said budget and on September 3, 1929, the petitioner made oath before the county auditor of Yuba County that she was then in possession of the sum of $132,117.45, which belonged to said county; that this fact was duly certified to by the auditor and that the petitioner thereupon paid said sum to the treasurer, which was forthwith deposited in the veterans' memorial fund.

It is contended by the respondent and by the intervener that, (1) at the time the county budget for 1929 was adopted the amount which was then contained in the memorial fund was insufficient with which to purchase the property in question for the reason that the petitioner then held possession of $132,117.45 belonging to that fund, and (2) in classifying the funds for the purpose of providing for the purchase of this property the county budget did not comply with the requirements of section 3714, subdivision 2, of the Political Code.

 The purchase of a Veterans' Memorial Hall is authorized by law. Section 4041f of the Political Code reads:

''Any county may provide and maintain (1) a home or homes for veteran soldiers, sailors and marines who have served in the United States honorably in any of its wars; (2) buildings, memorial halls, or meeting places for the use of patriotic, fraternal and benevolent associations of such persons. For these purposes the board of supervisors of any county shall have jurisdiction and power; (a) To purchase, receive by donation . . . real or personal property necessary for such building or buildings, and to improve, preserve, take care of, manage and control the same. . . . (c) To levy in any year a special tax not to exceed three mills on the one dollar of assessed valuation on all the

taxable property in the county, . . . to be expended for the purposes hereof.''

There is no merit in the contention that the memorial fund did not actually contain sufficient money with which to repurchase the veterans' memorial property at the time the budget was adopted in 1929. It is true that at the time the budget was adopted in 1929, the treasurer then had in his immediate possession only $25,976.40. The balance, amounting to $132,117.45, was then held by this petitioner, Mrs. Rideout, under a former contract to sell the same property, which agreement was held to be in conflict with the inhibition of article XI, section 18, of the Constitution and void because the first contract incurred an obligation in excess of the revenue of Yuba County which was then provided for that fiscal year. The result was that Mrs. Rideout became a trustee, holding the money for that particular county fund. The money was accessible and was an actual part of that fund, although it was temporarily held by a trustee instead of the treasurer. It was in fact subsequently returned to the treasurer September 3, 1929. It may not, therefore, be reasonably said that the last contract for the purchase of the property was void for lack of funds.

We are of the opinion that in adopting the budget for the year 1929, the memorial fund was sufficiently classified to conform with the requirements of section 3714, subdivision 2, of the Political Code as amended in 1929 (Stats. 1929, p. 1129), which provides with respect to the auditor's tabulation of proposed expenditures that:

''Such estimates of expenditures shall be classified to set forth the data by funds, organization units, character and objects of expenditures; the organization units may be subclassified by functions and activities at the discretion of the county board of supervisors, but the expenditures for each organization unit shall be classified under the general classes of (1) salaries and wages; (2) maintenance and operation; (3) capital outlay; (4) interest and debt redemption; and (5) expenditures proposed to be made from bonds or other income not yet authorized.''

It will be observed that the contract price for the property was $150,000. The petitioner's claim was filed for this sum and the warrant of the auditor was drawn for the same amount. The petition for a writ of mandate asks that the treasurer be directed to pay the petitioner the sum of $150,000 as the purchase price of the property. While it is true that the budget shows there is in the memorial fund the sum of $158,093.85, the amount in excess of that which is required to complete the purchase of the property will not invalidate the proceedings.

The official budget of proposed expenditures of Yuba County for the fiscal year July 1, 1929, to June 30, 1930, shows the following classification of funds: "Organization Unit: Veterans Memorial Building. Classification: Veterans Memorial Building. CAPITAL OUTLAY, 3 Lots & Building to be purchased under provisions of Sec. 4041f Political Code and/or settlement of claim for past County use and occupation thereof. (Amount) Requested, $158,093.85; Allowed, $158,093.85. Name of Fund, Veterans Memorial Bldg. Fund.''

Thus it appears the particular fund or organized unit is designated ''Veterans Memorial Building Fund.'' This fund is then classified as the statute requires that it shall be. In the column headed ''Classification'' there appears in capital letters ''Capital Outlay,'' which is followed by this explanation for the purpose for which the ''capital'' may be expended, ''3 Lots & Building to be purchased under provisions of Sec. 4041f Political Code. . . . '' Thus far there is a strict compliance with the statutory requirements of section 3714 of the Political Code. The language following the classification of the fund as ''Capital Outlay'' is merely descriptive of the proposed objects of expense. The latter portion respecting the ''claim for past county use'' may not strictly be said to be capital outlay. It may not constitute a proper expenditure from this particular classification. It is, however, not involved in this petition for mandate and may, therefore, be disregarded as surplusage. Clearly the $150,000 purchase price of a veterans' hall is authorized by law, and this expenditure may unquestionably be classified as capital outlay. The erroneous inclusion of

a proposed allowance of claim from a fund, since the law does not require the detailed classification of expenditures, does not render the budget void.

The statute provides merely that "the expenditures for each organization unit shall be classified under the general classes. . . . " Five general classes only are specified. The proposed expenditures must be designated as falling within one of these five general classes, to wit, salaries and wages, maintenance and operation, capital outlay, etc. Transfers from one of these general classes to another may not be made, provided, however, that after due notice by a four-fifths vote of the board of supervisors, any such appropriation may be canceled in whole or in part, in which event the unused balance must be returned to the original fund from which it came. It is then provided: "Liabilities incurred, or warrants issued *in excess of any of the budget appropriations* as originally determined, . . . shall not be a liability of the county. . . . The county board of supervisors shall approve no claim, and the county auditor shall issue no warrant for any expenditure *in excess of said budget appropriations.*"

In the present case the organization unit was identified in the budget as "Veterans' Memorial Building." This unit was then classified as required by the statute into a general class termed "Capital Outlay." No claim was allowed, and no warrant was issued for a sum in excess of this fund. No subdivision of these general classes is required. It would be unreasonable and would frequently defeat the business operations of a county to require the funds of a general class to be segregated into a multitude of incidental classes There would be danger of mislabeling the character of these expenditures. The law wisely discourages such a cumbersome and futile process. (*People* v. *Cairo Ry. Co.*, 237 Ill. 312 [86 N. E. 721]; *People* v. *Chicago & E. I. Ry. Co.*, 310 Ill. 257 [141 N. E. 824]; *People* v. *Chicago, B. & Q. Ry.*, 306 Ill. 529 [138 N. E. 135].) ▮ The budget statute should receive a reasonable construction. (*People* v. *Jackson*, 272 Ill. 494 [112 N. E. 344]; *State* v. *Hare*, 78 Or. 540 [153 Pac. 790, 792].) In the case of *Du Bose* v. *Cranford*, 131 Miss. 770 [95 South. 676, 677], in construing a

similar budget statute, the court said: "The law ought not to be so strictly construed as to make it impracticable to operate under it." In the case of *State* v. *Hare, supra,* it was said: "The statute was not intended to stop the wheels of progress, or to be a stumbling block." The apparent effort to also authorize the allowance of a claim from this "Capital Outlay" fund in "settlement of . . . past county use" of the property was not warranted. Since such incidental specification of proposed expenditures is not required this sentence may be disregarded as surplusage and harmless. ■ Obviously, money expended in "settlement of claim for past county use" of the property is not "Capital Outlay." Capital outlay or investment includes only the money expended in acquiring, equipping and promoting an enterprise. (*Terre Haute & I. R. Co.* v. *State,* 159 Ind. 438 [65 N. E. 401, 407].)

Since the last-mentioned sentence, which appears in the budget, does not refer to a necessary classification of the fund, but rather indicates a purpose to subsequently authorize an unwarranted claim against this particular fund, it may be ignored. The legality of allowing a claim for previous use of this property from the "Capital Outlay" fund is not involved in this proceeding. This court is merely called upon to determine the validity of the proceedings incident to the purchase of the property and the payment of the warrant for $150,000 from the capital outlay fund in satisfaction of the purchase price.

We are satisfied the proceedings are valid and that the writ of mandate should issue as prayed for directing the treasurer of Yuba County to pay the petitioner's warrant for $150,000 in satisfaction of the purchase price of the property which is described in the petition. It is so ordered.

Plummer, J., and Finch, P. J., concurred.